## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Coleman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 8, 2016

Court of Appeals Case No.
79A04-1507-CR-955

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1406-FA-14

**Mathias, Judge.**

[1] William Coleman ("Coleman") was convicted in Tippecanoe Superior Court of Class A felony child molesting. Coleman appeals his conviction and raises the following two issues:

> I. Whether the trial court abused its discretion when it gave an additional jury instruction during jury deliberations; and,

> II. Whether the State presented sufficient evidence that Coleman penetrated the victim's sex organ.

[2] We affirm.

## Facts and Procedural History

[3] On or about April 21, 2012, forty-one-year-old Coleman attended a party at a friend's home, which was also attended by the friend's children, including seven-year-old K.B. Coleman had been drinking and asked to sleep on his friend's couch. During the middle of the night, Coleman entered K.B.'s bedroom and pulled her pants and underwear down to her ankles. He then touched K.B.'s vagina with his finger and moved his finger around while his finger was "partly in" her vagina. Tr. p. 103.

[4] Coleman then briefly left K.B.'s bedroom to retrieve a phone or camera. K.B. pulled her underwear and pants back up while he was gone, but when Coleman returned he pulled her pants and underwear back down. K.B. then heard the sound of a photograph being taken and saw two flashes. Coleman pulled K.B.'s underwear and pants back up and left K.B.'s bedroom. K.B. then heard the sound of the front door of the house closing.

[5] The next morning, K.B. reported the incident to her parents. Her parents reported the incident to the police, and K.B. was taken to Riley Hospital for an examination by a sexual assault nurse. The nurse found a piece of redundant skin on K.B.'s labia majora. The exam also indicated swelling or thickening of K.B.'s hymen.

[6] The pediatrician who also examined K.B. concluded that thickening of the hymen could be a normal variation and scheduled K.B. for a follow up examination to rule out trauma. When K.B. was reexamined two weeks after the first exam, her hymen was no longer thickened, and its appearance was consistent with what one would expect in a seven-year-old child. Therefore, the pediatrician concluded K.B.'s thickened hymen was consistent with trauma and could have been caused by finger contact.

[7] The piece of redundant skin found on K.B.'s labia majora was sent to the Indiana State Police Laboratory. A forensic biologist concluded that the DNA from the collected sample was consistent with Coleman's DNA.

[8] On June 2, 2014, Coleman was charged with Class A felony child molesting and Class C felony child molesting. A two-day jury trial commenced on June 9, 2015. During closing arguments, Coleman admitted to touching K.B. in a sexual manner, but argued that the State failed to prove that Coleman penetrated her sex organ with his finger.

[9] During deliberations, the jury directed numerous questions to the trial court concerning the Class A felony charge and specifically concerning the element of

penetration. The trial court told the jury on each occasion that the court could not answer its questions.

[10] Eventually, the jury informed the court that it had reached an impasse on the Class A felony charge. The court asked what could be done to assist the jury, and the foreperson specifically requested a legal definition of penetration. Therefore, over Coleman's objection, the trial court determined that it was appropriate to re-read all of the final instructions to the jury and to include the following statement, which the court originally omitted from the State's proposed final instructions: "Penetration does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated." Tr. p. 384.

[11] The jury returned to its deliberations and found Coleman guilty of both Class A and Class C felony child molesting. At the sentencing hearing, the trial court merged the two counts and entered judgment of conviction only on the Class A felony count. The court then ordered Coleman to serve thirty-five years in the Department of Correction, with five years suspended to probation. Coleman now appeals.

**Jury Instruction**

[12] Coleman argues that the trial court abused its discretion when it gave an additional jury instruction after jury deliberations had begun and the jury had reached an impasse on the Class A felony charge. "We review a trial court's instructions to the jury for an abuse of discretion." *Isom v. State*, 31 N.E.3d 469,

484 (Ind. 2015). The trial court abuses its discretion "when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury." *Id*. at 484-85.

As a general rule, after the jury begins its deliberations, the trial court should not give any additional instructions. *Hero v. State*, 765 N.E.2d 599, 602 (Ind. Ct. App. 2002) (citing *Crowdus v. State*, 431 N.E.2d 796, 798 (Ind. 1982)), *trans. denied*. "This rule prevents the trial court from giving special emphasis, inadvertent or otherwise, to a particular issue in the case, and thus avoids the possibility that the additional instruction might tell the jury what it ought to do concerning that issue." *Dowell v. State*, 973 N.E.2d 58, 60 (Ind. Ct. App. 2012) (citing *Crowdus*, 431 N.E.2d at 798).

"[O]ne limited and narrow exception" to that "strict rule" exists. *Graves v. State*, 714 N.E.2d 724, 726 (Ind. Ct. App. 1999). "[T]he court may modify its instructions when it is faced with an omitted instruction or an erroneous instruction, so long as it is fair to the parties." *Hero,* 765 N.E.2d at 602 *(*citing *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981)). Specifically,

> [i]t is only when the jury question coincides with an error or "legal lacuna" in the final instructions that a response other than rereading from the body of final instructions is permissible. A "lacuna" is an "empty space or missing part; a gap." If the trial court decides to give an additional instruction because the question relates to a "legal lacuna," the trial court must reread all of the instructions so that the additional instruction will not be over-emphasized.

*Dowell*, 973 N.E.2d at 60 (internal citations omitted).

[15] In this case, the trial court initially declined to give the following instruction, which was included in the State's proposed final instructions:

> Penetration does not require that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated.

Tr. p. 384. During its deliberations, the jury sent questions to the trial court concerning the "legal definition" of penetration and the definition of the "sex organ." Tr. pp. 367, 369. Each time, the court declined to answer the questions and advised the jury to re-read the final instructions.

[16] Eventually, the jury reached an impasse in its deliberation of the Class A felony child molesting charge. The foreperson informed the court that a definition of penetration would assist them with their deliberations on that charge. Tr. p. 376.

[17] Therefore, the trial court decided to give the State's proposed final instruction that it originally declined to tender to the jury and stated:

> I believe [the omitted instruction] is an accurate statement of the law but the court was reluctant to provide that in the instruction in the past because it wasn't part of the approved instruction in the case law that I found. However, based upon what they've indicated to the court now I find that there is a legal lacuna which I think is the proper terminology which means that the jury is confused about a legal concept that has not been sufficiently explained in the instructions. And so I'm going to find that it would be proper to reinstruct the jury with the

> additional part of the instruction that the State had requested
> which *is penetration does not require the vagina to be penetrated only*
> *that the female sex organ including the external genitalia be penetrated.*

Tr. pp. 379-80 (emphasis added). The trial court then replaced the original instruction with the instruction containing the previously omitted language concerning penetration and re-read the court's final instructions in their entirety to the jury. *See* Tr. pp. 380-92.

[18] Importantly, the additional instruction tendered to the jury is a correct statement of law.[1] *See Morales v. State*, 19 N.E.3d 292, 298 (Ind. Ct. App. 2014), *trans. denied*; *Stetler v. State*, 972 N.E.2d 404, 407-08 (Ind. Ct. App. 2012), *trans. denied*; *Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), *trans. denied*; *see also* Ind. Code § 35-31.5-2-221.5 (replacing Ind. Code § 35-41-1-9). Also, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003). Moreover, the additional instruction properly clarified the legal meaning of the term "penetration" for the jury. *See Hero*, 765 N.E.2d at 602 (stating that "[b]ecause the jury question coincided with a legal lacuna

---

[1] For this reason, we reject Coleman's argument that no evidence supports giving the instruction or that the court "resolved an evidentiary deficiency by" giving the additional penetration instruction. *See* Appellant's Br. at 13-14.

present in the tendered instructions, the lower court had the authority to do more than just re-read the original instructions").

[19] Moreover, we are not persuaded by Coleman's argument that the trial court gave the jury an impermissible "Allen charge," which is a "supplemental instruction suggesting to an apparently deadlocked jury that it should reach a verdict, or similar admonishment which might encourage the jury to unduly compromise the verdict." *See Clark v. State*, 597 N.E.2d 4, 7 (Ind. Ct. App. 1992), *trans. denied*; *see also Allen v. United States*, 164 U.S. 492 (1896); *Lewis v. State*, 424 N.E.2d 107, 109 (1981) (stating that an "Allen charge" is a "designation given to a supplemental charge given by a trial judge to an apparently deadlocked jury").

[20] Nothing in the record indicates that the trial court believed that the jury was deadlocked. The jury's questions to the court during its deliberations reflect its confusion over the meaning of the term "penetration." The trial court eventually determined that a gap or "legal lacuna" in the instructions prevented the jury from reaching a verdict after the foreperson informed the court that a definition of penetration would assist them with their deliberations. Tr. p. 376. The trial court reasonably believed that the jury was confused, and further clarification of the law was appropriate and necessary. Simply, no evidence in the record suggests that the additional instruction was given to coerce the jury into reaching a verdict that was not truly unanimous.

[21] We also conclude that Coleman was not prejudiced when the jury was given the additional instruction. The trial court noted that tendering only the additional penetration instruction to the jury would be improper. Tr. p. 380. Therefore, the trial court re-read the court's final instructions to the jury in their entirety, including the penetration instruction. The additional instruction was not emphasized in any way when the final instructions were re-read to the jury. The additional penetration instruction provided a legal definition.[2] It did not unnecessarily emphasize a particular evidentiary fact or any witness testimony.

[22] For all of these reasons, we conclude that the trial court did not abuse its discretion when it gave the additional penetration instruction to the jury during its deliberations.

## Sufficient Evidence

[23] When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence, and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id*. If substantial evidence of probative value exists from which a reasonable trier of fact could have drawn the conclusion that the

---

[2] Trial courts have discretion to give instructions that include definitions of words or phrases. *See Erickson v. State*, 439 N.E.2d 579, 580 (Ind. 1982).

defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

Coleman argues that the evidence is insufficient to sustain his Class A felony child molesting conviction because the State failed to prove that his finger penetrated K.B.'s sex organ. Appellant's Br. at 17; *see also* Indiana Code § 35-42-4-3(a)(1); Appellant's App. p. 59 (charging Coleman with performing deviate sexual conduct "to wit: an act involving the hand and/or finger of [Coleman] and the vagina of K.B."). On the date Coleman committed the offense, deviate sexual conduct was defined as "an act involving . . . the penetration of the sex organ or anus of a person by an object."[3] *See former* Ind. Code § 35-31.5-2-94. [4]

K.B. testified that Coleman touched her vagina with his finger and moved his finger around. Tr. p. 102. She explained that his finger was partly "on top of skin and partly in." Tr. p. 103. She testified that it felt uncomfortable. *Id.*

Dr. Tara Harris, who specializes in child abuse pediatrics, observed that K.B.'s hymen appeared swollen or thickened, which is not "the typical appearance [she] would see on a prepubertal child." Tr. p. 176; *see also* tr. pp. 180-81. Dr.

---

[3] The trial court instructed the jury by reading the charging information and the statutory definition of deviate sexual conduct. Tr. pp. 354, 357. During closing arguments, the State argued that it had proven that Coleman penetrated K.B.'s "sex organ" with his finger. Tr. pp. 339, 351.

[4] Effective July 1, 2014, the General Assembly repealed the former statute defining deviate sexual conduct and replaced it with Indiana Code section 35-31.5-2-221.5, which defines "other sexual conduct" as "an act involving . . . the penetration of the sex organ or anus of a person by an object."

Harris also explained that the hymen is "a thin piece of tissue that surrounds the edges of the vaginal opening." Tr. p. 176. Dr. Harris used diagrams and photographs, which were admitted as exhibits to describe the female genitalia to the jury.

[27] Dr. Harris reexamined K.B. two weeks after the initial exam to determine whether the swollen appearance of K.B.'s hymen was the result of trauma. During the follow up examination, Dr. Harris observed that K.B.'s hymen appeared "flat and shiny" as she would "expect for a prepubertal child." Tr. p. 186. Therefore, the doctor concluded that the swollen appearance of K.B.'s hymen during the first exam was consistent with a "history of the trauma to that area." Tr. p. 187. Dr. Harris also agreed that the "thickening or swelling of the hymen" indicated "that something actually came into contact" with it. Tr. p. 188. She also explained that in a prepubescent female, the "hymen is kind of tucked up inside the body" . . . [s]o, to get to the hymen the labia majora have to be separated . . . when the labia majora are in their normal position they are covering all those internal structures." Tr. pp. 193-94. Finally, Dr. Harris testified that if "there is just contact with those labia majora there is no way to [] then cause changes on the hymen." Tr. p. 194.

[28] Under these facts and circumstances, the evidence was sufficient to prove that Coleman used his finger to penetrate K.B.'s sex organ. We therefore affirm Coleman's conviction for Class A felony child molesting.

# Conclusion

[29] The trial court did not abuse its discretion when it gave the additional penetration instruction after the jury began deliberating. Also, the State presented sufficient evidence to sustain the jury's guilty verdict on the Class A felony child molesting count. We therefore affirm Coleman's conviction for Class A felony child molesting.

[30] Affirmed.

Kirsch, J., and Brown, J., concur.