**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT *PRO SE*:

**MARQUIS SHIPP**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARQUIS SHIPP, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-PC-322 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-0505-PC-88140

**March 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Marquis Shipp was convicted of three counts of Class A felony dealing in cocaine and sentenced to an aggregate term of forty years of incarceration, convictions and a sentence we affirmed on direct appeal. Shipp then filed a petition for post-conviction relief ("PCR"), contending that he received ineffective assistance of trial and appellate counsel in several respects. Concluding that Shipp has failed to establish that he received ineffective assistance of trial and appellate counsel, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 30, 2004, Indianapolis Police detectives used Dante Herndon, a confidential informant, to purchase cocaine from Shipp. Herndon made another controlled buy of cocaine from Shipp on October 7, 2004. Police obtained photographs of Shipp standing in the doorway of the residence in which the transaction took place. On January 26, 2005, Herndon made a third controlled buy of cocaine from Shipp. Before the third transaction, Herndon and Shipp, who were under constant surveillance, went to purchase a cigar from a liquor store, and police obtained video of Shipp in the parking lot.

On May 25, 2005, police met with Shipp, and Indianapolis Police Detective Frank Poskon informed Shipp that police had conducted three controlled buys from him using Herndon. Shipp responded that he did not believe that Herndon would do that to him. According to Indianapolis Police Detective Robin Foster, Shipp admitted that he had sold drugs to Herndon but that he had since quit selling drugs. Police arrested Shipp following the statement.

2

On May 26, 2005, the State charged Shipp with three counts of Class A felony dealing in cocaine and three counts of Class C felony dealing in cocaine. On May 27, 2005, Shipp's initial hearing was conducted, during which attorney Scott Reust was appointed and after which probable cause to hold Shipp was found. On August 16, 2005, attorney William J. Rawls appeared for Shipp. On August 11, 2006, a jury found Shipp guilty as charged, and the trial court entered judgment of conviction for the three Class A felony dealing in cocaine charges. On August 29, 2006, the trial court sentenced Shipp to forty years of incarceration for each Class A felony dealing in cocaine conviction and ordered that the sentences be served concurrently.

Shipp appealed his convictions and sentence, contending that (I) the trial court abused its discretion in allowing testimony regarding threatening hand gestures Shipp made to Herndon during trial, (II) the prosecutor made improper comments during closing, (III) certain evidence lacked proper foundation, (IV) Herndon's testimony was inherently unreliable, and (V) the trial court abused its discretion in sentencing him. *Shipp v. State*, No. 49A04-0609-CR-540, slip op. at 1 (Ind. Ct. App. Sept. 21, 2007), *trans. denied*. This court affirmed Shipp's convictions and sentence, and the Indiana Supreme Court denied transfer. *See id*. at 2-10.

On May 16, 2011, Shipp filed the amended PCR petition that is the basis of this appeal. In the PCR petition, Shipp alleged ineffective assistance of trial and appellate counsel on several grounds. At no point in the proceedings did Rawls, Shipp's counsel

3

during trial, testify. On March 21, 2012, the post-conviction court denied Shipp's PCR petition in full.

## DISCUSSION

### *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court…. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

Shipp identifies eight alleged trial errors and claims that his trial counsel was ineffective for failing to object to the errors, his appellate counsel was ineffective for failing to raise the errors as appellate issues, and/or that the error standing alone entitles him to relief in this post-conviction proceeding. These arguments will be addressed as claims of ineffective assistance of counsel unless they cannot be fairly characterized as such. Shipp also contends that his trial counsel's suspension from the practice of law for part of the time of his representation of Shipp amounts to a violation of his right to counsel.

### *Standard of Review for Ineffective Assistance of Counsel Claims*

We review claims of ineffective assistance of counsel based upon the principles

enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694).

Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

> We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997).

*Fisher v. State*, 810 N.E.2d 674, 676-77 (Ind. 2004). Shipp's claims of ineffective assistance of appellate counsel fall into the second category.

### I. The Probable Cause Affidavit

Shipp contends that the probable cause affidavit relied upon to hold him prior to trial was deficient because neither the prosecutor nor the judge signed it and that it failed to establish probable cause to hold him in any event. Shipp's argument is misguided in several respects. A probable cause affidavit need only be signed by the person swearing or affirming to the information included in the affidavit, as was done here. *See* Ind. Code § 35-33-5-2.

5

Second, even if Shipp is correct that the probable cause affidavit was defective and should have been challenged, we simply cannot give him the relief that he would have been entitled to, which is release prior to trial. Shipp contends that a defective probable cause affidavit would have entitled him to have all of his charges dropped, but this is simply not the case. The probable cause affidavit in this case served only to justify holding Shipp prior to trial and had no bearing on the filing of his criminal charges. Indeed, there is no requirement that a charging information contain any statements regarding probable cause. Ind. Code § 35-34-1-2. At most, Shipp would have been entitled to pretrial release, and so any motion to dismiss or attempt to raise the issue on appeal would have been fruitless.

## II. Charging Information

Shipp also contends that the charging information was fatally defective because it failed to list Herndon as a material witness. *See* Ind. Code § 35-34-1-2(c) ("An indictment or information shall have stated upon it the names of all the material witnesses."). Even assuming, *arguendo*, that the State was required to disclose confidential informant Herndon, the remedy would not have been dismissal of the charges, as Shipp contends, but preventing the State from obtaining a continuance due to the absence of an unlisted witness. Ind. Code § 35-34-1-2(c). In any event, it is difficult to see how Shipp could have suffered any prejudice from the absence of Herndon's name from the charging information when it is abundantly clear that he knew all along who the State's confidential informant was. During Shipp's initial interview with police, he was told that the police had used Herndon as their confidential informant, and Shipp even expressed disbelief that Herndon would have done

6

that to him. Failure to challenge the charging information was not ineffective assistance of trial or appellate counsel.

### III. Initial Hearing

Shipp contends that he was denied counsel at his initial hearing, which he contends is a fundamental violation of his Sixth Amendment right to counsel. Shipp, however, does not specifically argue that his trial or appellate counsel was ineffective for failing to raise the issue but, instead, presents it as a freestanding claim. As the State points out, "[f]reestanding claims that the original trial court committed error are available only on direct appeal." *Martin v. State*, 760 N.E.2d 597, 599 (Ind. 2002). Shipp does not explain why this claim could not have been raised on direct appeal and so has waived it.

### IV. Confession

Indianapolis police officers met with and interviewed Shipp before his arrest, and he told them that he had, in fact, sold drugs to Herndon. Shipp contends that his statement was obtained in violation of his constitutional rights and that his appellate counsel was ineffective for failing to raise the issue on appeal. Even assuming, *arguendo*, that Shipp's statement should have been suppressed, he cannot show prejudice in light of the other evidence against him. Herndon and police detectives testified to the particulars of each of the three controlled buys, and police were able to obtain photographs of Shipp at the scene of the second transaction and video of Shipp with Herndon before the third. In short, the State had ample evidence to prove that Shipp was the person who sold cocaine to Herndon without Shipp's statement, and "[a]n error in the admission of evidence is not prejudicial if the evidence is

7

merely cumulative of other evidence in the record." *Carter v. State*, 683 N.E.2d 631, 632 (Ind. Ct. App. 1997), *trans. denied*. Shipp has failed to establish ineffective assistance of counsel in this regard.

## V.  Lack of Meaningful Adversarial Testing

Shipp alleges that various pieces of the State's evidence were false and that his trial counsel was ineffective for failing to adequately investigate the State's case and his appellate counsel was ineffective for failing to raise the issue on appeal. The only evidence supporting these contentions, however, are Shipp's self-serving statements and affidavits attached to his PCR petition, none of the which the post-conviction court was required to credit. Moreover, Shipp's trial counsel did not provide evidence at any point in this post-conviction proceeding to support Shipp's contentions. "Where trial counsel is not presented in support, the post-conviction court may infer that trial counsel would not have corroborated appellant's allegations." *Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989).

## VI.  Discovery Matters

Shipp contends that his trial counsel was ineffective for failing to pursue prosecutorial misconduct claims based on the State's alleged failure to disclose several pieces of evidence prior to trial. Specifically, Shipp contends that the State concealed Herndon's identity, the fact that it intended to introduce evidence of Shipp's statements, and details of deals Herndon had made with police. As with the previous issue, the only evidence Shipp presents in support of this claim are self-serving statements that his trial counsel did not conduct proper discovery or that the defense did not have certain items prior to trial, statements the post-

8

conviction court was not required to credit. Moreover, Shipp's trial counsel did not corroborate Shipp's contentions, and the post-conviction court was therefore entitled to infer that trial counsel would not have done so. *See id.*

### VII. Failure to Challenge Sufficiency of Evidence

Shipp contends that his appellate counsel was ineffective for failing to claim on appeal that his convictions were supported by insufficient evidence. Specifically, Shipp contends that Herndon's testimony was inherently unbelievable and that his appellate counsel should have made an "incredible dubiosity" claim on direct appeal. "In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citing *Whedon v. State*, 765 N.E.2d 1276, 1277 (Ind. 2002)). "Appellate courts may, however, apply the 'incredible dubiosity' rule to impinge upon a jury's function to judge the credibility of a witness." *Id.* (citing *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)).

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love*, 761 N.E.2d at 810 (citations omitted).

9

Shipp's appellate counsel was not ineffective for failing to bring an "incredible dubiosity" claim. At the very least, Herndon was not the sole witness against Shipp, as several police witnesses testified regarding the three controlled buys. Moreover, our review of the record reveals no hint that Herndon's testimony was inherently improbable, coerced, or equivocal. Shipp's appellate counsel was not ineffective in this regard.

## VIII. Stipulation to Results of Forensic Testing on Cocaine

Shipp contends that his trial counsel was ineffective for stipulating to the forensic testing results showing that the substances he sold to Herndon contained cocaine. Essentially, Shipp contends that the results should have been challenged on the basis that the testing itself was somehow faulty and that an insufficient chain of custody existed. Shipp, however, presents no evidence of any deficiency either in the analysis of the cocaine or in the chain of custody. Moreover, because Shipp's trial counsel provided no evidence that he failed to properly investigate the forensic evidence, the post-conviction court was entitled to infer that he did. *See Dickson*, 533 N.E.2d at 589.

## IX. Suspension of Trial Counsel

Finally, Shipp contends that his trial counsel Rawls was suspended from the practice of law at the time of his representation, entitling him to a presumption that he was denied his right to counsel pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution. It is clear that Rawls was, in fact suspended from the practice of law from May 23, 2006, to June 21, 2006, while he was representing Shipp. *In re Rawls*, 936 N.E.2d 812, 814 (Ind. 2010) ("CLE noncompliance suspension,

10

5/23/06; reinstated 6/21/06.").[1] The following took place during Rawls's suspension: On May 24, 2006, Rawls apparently filed a motion to withdraw, which the trial court denied. On May 30, 2006, Shipp filed a *pro se* motion to continue, which the trial court granted, vacating a June 2, 2006, pre-trial conference and resetting it for June 14, 2006. Rawls did not appear in court on either occasion. On June 14, 2006, Rawls appeared late for the pre-trial conference and requested a continuance, to which the State had no objection, and the trial court reset the June 15, 2006, trial to August 10, 2006.

Although Shipp argues that Rawls's brief suspension entitles him to an automatic determination that he was denied the right to counsel, we decline to so hold. In *Little v. State*, 819 N.E.2d 496 (Ind. Ct. App. 2004), *trans. denied*, this court adopted the Seventh Circuit's rejection of the contention "that mere deficiencies in an attorney's bar membership give rise to a *per se* violation of the right to counsel under the Sixth Amendment." *Id*. at 504 (citing *U.S. v. Williams*, 934 F.2d 847, 851 (7th Cir. 1991)). In *Little*, we concluded that a mere showing of suspension is not enough, "requiring instead a showing of actual errors and omissions by counsel that prejudiced the defense." *Id.* (citing *Williams*, 934 F.2d at 851).

During his suspension, Rawls failed to appear for two proceedings and requested a continuance at a third, a request that was granted. It does not appear that Rawls's suspension prejudiced Shipp in any way. In other words, the record is devoid of actual errors or omissions by Rawls committed during his suspension that prejudiced Shipp. Consequently,

---

[1] In a disciplinary decision handed down on November 12, 2010, the Indiana Supreme Court disbarred Rawls for misconduct completely unrelated to his representation of Shipp. *See In re Rawls*, 936 N.E.2d 812, 812-15 (Ind. 2010).

11

Shipp has failed to establish that he was denied his constitutional right to counsel.

The judgment of the post-conviction court is affirmed.

RILEY, J., and BROWN, J., concur.